Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Michael B. Hyman presiding, case number 23-0134, Gail Galich v. Advocate Health and Hospitals Corp. Good afternoon. My name is Justice Michael Hyman. With me is Justice Carl Walker and Justice Sanjay Taylor. Before I begin, I appreciate if anyone who's not arguing would turn off their... If all four of you are arguing, that's fine. But if people are not arguing, you turn off your video. Okay. So you're splitting the arguments, I assume. Will the... Each side has 20 minutes. The appellant, tell us how much time you want to reserve and how you're going to split the arguments. I would like 15 minutes. Your Honor, Tim Eaton on behalf of the appellant, I would like 15 minutes for the argument, five minutes to reserve for rebuttal. Okay. Your Honor, Mike Reagan on behalf of the appellee, and we would appreciate the 20 minutes. Thank you. Are you splitting the argument? I see other people, two of your colleagues. Bruce, do you want to address that? Yes, Your Honor. Justice Hyman, I'm prepared to address any issues that the court may raise concerning prejudgment interest. I understood from conversations earlier in the case with colleagues on the other side that they don't intend to argue that, but would rather rest on the briefs on that issue. And if that's the Okay. All right. I think what we'll do is, since you go second, we'll see if it comes up and then play it by ear, if that's okay with Mr. Eaton. Yes, I do not intend to raise it, Your Honor. Okay, that's fine. And if it doesn't, if it's not raised and there's a flat flat, you have nothing to say on that, that's fine if you want to raise it. Unless one of the justices has a question. Okay, so Mr. Eaton, you may please proceed. Thank you. May it please the court, Your Honor, I do represent the defendants in this case. This appeal presents two vitally important questions regarding medical negligence in Illinois. The first is deciding what the ultimate issues are in a medical malpractice case. We believe the Illinois Supreme Court provides that answer in Johnson v. Armstrong. And the second concerns whether to reach a proper plaintiff's verdict. Jurors must all unanimously agree on at least one breach of a standard of care when several are alleged. This court's decision in Schiff v. Fryberg and even some of the plaintiff's cited authorities answer that question as well. Let me ask you a question to begin. The jury rendered a general verdict? Yes. And there was no request by any of the parties for special interrogatories, is that correct? Correct. So why doesn't section 2-1108 of the code of civil procedure apply? And let me read you if you, so you have it in your mind. It begins, unless the nature of the case requires otherwise, the jury shall render a general verdict. And then it goes on to talk about special interrogatories. So that was the reservation at the beginning. But it says the jury shall render a general verdict. That's what they did. What more is there? Well, Your Honor, I don't think that section applies when you have a situation where they have not been instructed properly. Because at this point, we're not trying to answer a specific question that would be in conflict with a general verdict. What we're saying is that this jury was not instructed properly, and therefore, they reached a general unanimous verdict based upon a misinstruction. So we don't believe... Oh, it's a misinstruction. I didn't read in your brief. I don't think you even cite IPI anything in your brief, if I'm not mistaken. Well, what we're talking about is the answer to the question that the jury asked during deliberations. I understand, but so you're not contesting any of the IPIs. I mean, there was agreement on what the jury instructions were. And as I understand it, is that correct? Yes, that's correct. In fact, what we are contesting is the answer to the question. I understand that the answers to the questions, there was no argument about that either, was there? Yes. There was an objection made by the defendants when that question was answered by the trial judge. The trial judge composed the answer. We objected, and we said we believed that the instructions that were given to the jury earlier were sufficient. And that was our position. What's the difference between what the judge provided in the response and the earlier jury instruction? The difference is that in the response that the judge gave, he said they did not need to be unanimous with respect to one or more of the various allegations and the negligence claim. And in the jury instructions, it talked about the burden being on the plaintiff to prove one or more of the following allegations. And then it said that in the verdict must be unanimous. And we believe there is a difference there because he's basically lessening the burden on the plaintiff by suggesting that of these four allegations, you do not need to be unanimous. You can have various votes on each allegation to come up with some sort of composite number 12. Well, let me ask you a hypothetical. Let's make this case very simple. Instead of taking it out of the medical malpractice, let's make it another negligent case. Two automobiles collide. Plaintiff is injured, files a lawsuit against the defendant, and makes various claims with regard to those injuries. The jury, half the jury says that the defendant was negligent in that the defendant was not paying attention. He was on his phone. And that's what caused the accident and the injuries. The six other jurors say, no, that wasn't it. He blew a stop sign. And that caused the accident and the injuries. And therefore, that was the negligence. Now, are you saying that in every case that's what's supposed to happen, that that's not unanimous? Even though they all agree it was negligence. You're saying that something else has to happen? Yes. I believe in a medical malpractice case, there is a difference between a general negligence case where you have ultimately a duty of care and various allegations of how that duty of care was breached. In a medical malpractice case, there must be a standard of care that relates to each of the allegations, which is what was done in this case. There were experts on both sides that related to these four allegations. And then you're looking at whether or not there was a breach of a specific standard of care, unlike the automobile accident case. You disagree with my hypothetical, but I can change my hypothetical to a medical malpractice case where there was expert testimony with regard to the standard of care. And both the six jurors say he breached the standard of care for reason A, and six jurors say he breached the standard of care for reason B. But everybody agrees they breached the standard of care, which caused the injury. What has to be proved has been proven. But they don't agree on what the exact cause was. But there are several ways that this could be caused. And you say now we have to, in every case, ask the jury what their theory was? No. Your Honor, what's different about your hypothetical versus what we have here is you're suggesting there was a standard of care, and it could have been breached in several different ways. What I am saying is required is that where you have multiple allegations, and each allegation has a separate standard of care that's been testified to by experts, that you can't mix and match breaches of standards of care. If there's only one standard of care, then how that standard of care was breached may involve sub-allegations with respect to, going back to your automobile case, one was paying attention, one was speeding, whatever the case may be. Those may be evidentiary issues that need to be decided before you determine whether a standard of care was breached. And your Honor, if... So you say that somewhere in a case law, which you haven't cited, that medical malpractice cases have a special way of being determined with regard to jury, as opposed to any other type of cases. We should cut out, you're cutting out medical malpractice cases, and they're being treated absolutely differently, even though there's no rule that says that, you agree with that, and there's no case that's ever said it, because you have to go to the criminal cases in order to even come up with an analogy to try to convince us here. Your Honor, that's simply not true. I think the Schiff versus O'Hare, when the trial judge responded, that they must unanimously find one or more of the following allegations to be true. That case is authority for our position. That case was a written opinion, not a Rule 23 order. That case is the only case in Illinois that has addressed it. There's been nothing since then that has overruled it. And to suggest that that case doesn't exist, which is really what the trial judge said, and what plaintiff's counsel is arguing in this case, is just incorrect. It stands for the very proposition that we're advocating, that where you have multiple allegations of negligence in a medical malpractice case, each with his own standard of care. And in that case, if I can go further, basically what it was saying was there were three different discrete actions. One, there shouldn't have been surgery in the first place. Two, there was no informed consent. Three, that there was no follow-up medical treatment. Each had its own standard of care. And the court said, in that case below, that you have to have unanimous agreement on at least one of these allegations. But that's your interpretation of the case. First of all, we don't have to follow Schiff, as you're well aware. But second, I'm not sure that's what it says. I don't see that language that you seem to read extremely broadly. I'm looking at it, and I don't see that it's saying that you have to, if they all agree as to that it was medical malpractice, they have to prove medical malpractice. But how you get there, you're saying, you have to show which avenue you get there. It seems to me that's what you're saying. No, Your Honor, that's not what I'm saying. What I am saying is that as to each allegation in Schiff, there was a separate standard of care, as there was here. And in order to prove that a standard of care breach is what caused the injury, you have to be specific to that standard of care. You cannot mix and match. For example, if I give the example of if there's only one standard of care that's alleged, I don't think anyone would disagree that that has to be unanimous, because that's negligence. And there has to be unanimity on negligence on causation and injury. So the fact that you have more allocations relating to different standards of care doesn't dilute the burden of the plaintiff to prove unanimously that there's been specific negligence. And I think the Johnson case is right on point, because it discusses not unanimity, but it discusses what needs to be alleged in medical malpractice case, which are specific acts of negligence, not general negligence. They distinguish the two in the decision. So Mr. Eaton, can I jump in? Because I do understand what you're saying, and I understand it totally, and I see the distinction that you're making. But the concern here is that we still did not have any special interrogatory, so we're still dealing with a general verdict. And after the jury was instructed, they went back and continued deliberating. We still don't really know whether or not the jury actually did have a unanimous verdict on any one of those issues using all three prongs of the ultimate issue being standard of care, negligence, and proximate cause. We have no way of knowing, because there was no special interrogatory. So if you can please help us with that, because that's where my concern is. Well, Your Honor, I do not believe that you could have a special interrogatory that would be given to the jury at the time they're deliberating, because certainly prior to the deliberation, the parties- You're correct. You're correct. It wouldn't come at the time of deliberating. It should have come before then. Everybody knew what the case was all about. Everybody knew all the different prongs involved. There should have been several special interrogatories entered in this case, or at least should have asked the trial court if we could, if counsel could get these special interrogatories on board. And it wasn't done. And that's where the difficulty comes in. So help us with that, please. I'd be happy to. I do not believe there was a special interrogatory that was given to the jury at the time of deliberation, because this verdict was reached improperly by a misinstruction. And the question I know that you asked me earlier, how do we know that they weren't unanimous on each one, or were unanimous? Well, we know that there's prejudice from the case law, and we've cited the case law, or people have heard Jenkins name one of them, that if they're misinstructed as to unanimity requirement, that is prejudice in and of itself. And this instruction came an hour before they delivered their verdict. So I don't see how one could find that there was a prejudice. And I still don't understand, an issue not raised by the plaintiff, by the way, that a general verdict is somehow relevant to the issue of whether or not they were properly instructed in answer to a question that they asked in deliberations. With regard to the criminal, you just mentioned one of the criminal cases. You would agree that criminal law provides greater protections for defendants than civil law does for civil defendants? I would. Okay, well, how about the most tort laws based on common law precedent? Well, criminal law is statutory? For the most part, yes. So why would the criminal law then even be relevant here because of all the different machinations? You go to a great extent in your brief, much of it is discussion of criminal law. It seems that that's, if there was something here, it would be in the civil law realm and not trying to mix it with something that's apples and oranges. Your Honor, we agree. But first of all, the plaintiff is the one in this response that said, if you look at criminal law, which is more protective of due process rights, I totally agree with that. And you look at, for example, a case where a person has various ways in which they could commit murder, but murder is the ultimate issue, that their ultimate means to reach that, then you do not need to have any type of unanimity on the various means in which the murder could take place. However, there are cases like Cooper v. Scott, which is another criminal case, where there were three different transactions involved with undercover policemen, and they were each required unanimity according to Cooper v. Scott. And in fact, the court said in Cooper v. Scott, you can't have four votes for this transaction, four votes for that, and then add them up and somehow have 12. Each requires a separate identification. I don't know what you're saying, but you're saying that that's like the standard of care, and it isn't. Either criminal law applies or it doesn't. And if it doesn't, then what are you left with? You're left with an appellate court case that you rely on. Well, first of all, Your Honor, I disagree with you that that does not apply. Because I think we're looking at the criminal law aspects are similar to civil in the respect that when you're dealing with separate conduct, separate transactions, then you need unanimity on those separate transactions. If you're dealing with alternate means to reach one ultimate issue, whether there was murder or sexual penetration, whatever the case might be, then you don't need the unanimity on each one of those. I think it's relevant. It was cited by the trial judge below. In fact, he was critical of us in his opinion for not even responding to the criminal law aspects, because he had raised several criminal cases which dealt with issues where there was alternate means, not where there were multiple acts. And so we think by analogy, the Stoner case, which the plaintiffs relied upon, relied upon criminal law in California. So I think we have more than just one case in Illinois. And by the way, I might add that when the Schiff decision was decided in 2002, and it is a published opinion, it is binding precedent, not only this court, I understand, but it has had the benefit of the Cleveland versus Long Kansas Supreme Court case. It had the benefit of the Stoner cases because they were all decided earlier, and they chose not to follow it. They simply decided that the trial judges answer, and by the way, it was answered. There seems to be some question raised by the trial judges that it wasn't answered or by Plaintiff's counsel. It was answered. It said it required unanimity on one or more of those allegations. So I think Schiff is very much on point. And I think you cannot look at Schiff in a vacuum. I think you have to look at Schiff in the context of Johnson versus Armstrong case, which is decided by the Supreme Court in 2022 unanimously, where they are saying, you have to have a separate standard of care in a given situation for each allegation. So for example, if you had, if we all agree that in order to prove specific negligence, and you only had one allegation in the negligent category, then you would be required just like it would be required in causation of injury. But now if you have 12 allegations, what the position is of the trial court judge and Plaintiff's counsel is you could have one vote for each of those allegations. And somehow that's proven that there's been a breach of the standard of care because the composite number is 12 different jurors. That's just not square with the Johnson case and the medical malpractice cases in this state. And what we're asking this court to do is perhaps fill in the reasoning, if you agree with us, and I hope you do, that in med mal cases, it requires something more than just in the general negligence case involving the automobile where each action in and of itself would be a breach of the duty of care, but there's not a specific standard of care, which is required in medical malpractice cases. Victor, I'd like to explore the distinction that you're drawing, because if I understand it correctly, you're not so much drawing a distinction between ordinary negligence cases and professional negligence cases, which require expert testimony or experts to testify that standard of care. I understand your argument to be based on a distinction between a medical malpractice case that's predicated on a single standard of care versus a medical malpractice case such as this one, which is predicated on multiple standards of care. And I think you're conceding that in where it's based on a single standard of care that a composite verdict, I'm using your words, and by that I mean basically adds up to 12. A composite verdict could stand, but it could not stand in a case where you have multiple standards of care. Is that your argument? Essentially, Your Honor, but let me fine tune it, because it seems to me that you wouldn't have ways in which the breach of standard of care in allegations if there's only one standard of care. For example, one of the allegations here is that the plaintiff was not properly oxygenated. Well, there were three different ways in which that occurred. They didn't put on an LMA mask. They didn't have the proper intubation. There were several different ways in which that could occur. I'm saying that as those individual reasons why he wasn't oxygenated properly, you do not have to have unanimity, but you do have to have unanimity when you're talking about standard of care, properly oxygenating the plaintiff, and that's what's required. One of those allegations in the four allegations that were made has to be proven by unanimous verdict. So essentially, I am saying what you're saying, that if there was just one allegation of standard of care, we're talking about the means by which that was breached. Yes, you do not have unanimity on the means by which it was breached, but if you're talking about a situation where you have multiple and different standards of care, you do have to have is that any different than saying different theories? I'm not sure the nomenclature makes a difference, but if we're talking about ways in which that was breached, yes, that's different. If you're talking about the standard of care that must be breached to cause an injury, which is what you must prove by unanimous vote, then that's different. And that's my argument that as to a specific standard of care, you cannot have, again, in my example of 12 different allegations of breaches of standard of care, you cannot possibly analyze Johnson by saying one vote for each of those 12 allegations would be sufficient. It just does not square with what our Supreme Court is saying in a medical malpractice context. What about, so you, let me read what the Supreme Court said, as I'm quoting from Dillon versus Evanston Hospital, it's a 2002 Supreme Court case. Yes. Where there's a general verdict and more than one theory is presented, and this is a malpractice case. Yes. The verdict will be upheld if there was sufficient evidence to sustain either theory, and the defendant having failed to request special interlocutories cannot complain. Why wouldn't that apply? Because we're talking about an incorrect instruction that we objected to, which said that you need not be unanimous on any one element here of specific negligence. And that is different than what we're talking about in Dillon. I'm well aware of Dillon, because I've dealt with special negligence, but we're talking about specific standards of care. I believe the Johnson case is saying, and I think that's controlling in the medical analysis here, that you have to have unanimity on one or more, if you also look at Schiff. And let me come back to Schiff for a moment. I understand that in terms of analysis, there isn't much of one, but the question becomes to me, and as all of you have, I've done this for many years, at what point does an opinion become non-binding, because it doesn't have enough analysis? Does it take one sentence of analysis to explain what they meant? Does it take two sentences, two paragraphs? On the trial court, that was binding authority. And by the way, in the DuPage County case, which I also cited, where this was at the trial court level, the same issue arose. The jury came back and said, do we have to be unanimous on one or more of the following allegations of negligence? The court took some time to think about it, allowed the parties to come back with case law, allowed the parties to come back with written instructions, and said Schiff controls. And what happened? The jury was informed, and they ended up having a mistrial, because they couldn't reach unanimity on any one allegation. That may well have happened here, had they been properly advised that Schiff is the controlling law. I mean, that is not, I'm not making this up. I mean, this is what trial judges determined in DuPage, a trial judge determined in DuPage, that Schiff was the law they needed to follow, and there's no contrary authority in this state. And I, again, would request that this panel deal with this issue in a meaningful way, so that if these questions are asked again, there's some clear guidance as to why that's necessary. But Schiff is what it is right now. And the cases that are cited by the plaintiffs' counsel, the Cleveland case, which used, by the way, a general negligence allegation, general negligence hypothetical, that dealt with a car accident, and they said, that's why we don't feel there needs to be human memory under the standard of care, it didn't make any sense. And by the way, the Cleveland case has not been cited, except in, I think, one New Mexico appellate court case, which dealt with special interrogatories. So, can you, I think, if you could sum up. Sure. Your honors, we believe that we were very prejudiced by an instruction that told them that no unanimity was needed. We're not trying to lift the shroud of jury deliberations, but when they lift it, and they ask a question, they have to be told the right answer. And the right answer was, look at the instructions, not that you don't need to be unanimous. The right answer was not a wrong answer. Thank you, and I look forward to my rebuttal time. Thank you. You may proceed. Thank you. Thank you, Justice. May it please the court, Mr. Eaton, my name is Michael T. Reagan, and I, along with John Kralovec, Joe Convoy, and Bruce Paff, represent the plaintiff, Gail Gallich, the mother and guardian of her disabled adult son, Stephen Butts. There was just one wrong which was caused to Stephen Butts after he walked from his which deprived him of sufficient oxygen. This caused the permanent brain damage such that he is now in need of full-time care to survive in an assisted living facility. Dr. Jew first saw Stephen at 5 a.m., and he was- We know the facts. We know the facts. I know that. I don't intend to go into it. Why don't you respond to what Mr. Eaton said? I mean, has this already been decided? We should follow the one case that's out there. Absolutely not. And, you know, so let's go to Schiff. I mean, when he, when you ask me to talk about what he talks about, I mean, they largely talk all about Schiff. And before you do that, though, Mr. Reagan, let me just get this out of the way, because you guys seem to disagree on the standard of review. You don't seem to acknowledge, as Mr. Eaton does, that there's really a two-step standard here, and that the only, the ultimate question is whether or not the judge gave the correct instruction as to the law, and his position is that facts were viewed de novo, and you seem to go back and forth as to whether or not the standard of review is abuse of discretion or de novo. Can you just verify that for us? Sure, absolutely. So I'm the one who said what you just said, that there is a two-step standard of review here, that there is an abuse of discretion standard, and then there was also, you know, in terms of the correctness of the instruction, that's a matter of law. I say that. They've accused me in their brief of not recognizing that. That's the first sentence in their brief, and I strongly disagree. I simply... But the reason for it, Mr. Reagan, I'm sorry that I cut you off. The reason for it is that they want to be clear that they believe the ultimate issue here is whether or not the judge gave a correct, that the judge adequately stated what the law is in giving the instruction to the jury. That's where they're going with it, and that is clearly de novo, and I want to make sure you agree with that. Oh, I would agree with that, absolutely. And I think they've misrepresented my brief in saying that we don't. And so if Schiff, and Justice Hyman, I'm trying to follow your lead here, which is always wise, you know, we have a strong disagreement with how the defendants had described Schiff in their brief, and also as they described it to you today, and I think perhaps you may have alluded to that very obliquely, and it's for that reason that we have included the sole page from Supplemental Appendix so that you can see it. The circuit court in Schiff did not directly answer that jury's question, but merely restated the language of the standard IPI instructions. This court, in one sentence addressing several instruction issues, said that the discretionary actions, which they were described to be in that opinion in Schiff, were not error. There was no further explanation. The defendant's brief states that the trial court, and thus this court, agreed, quote, and I'm quoting from their brief, the jurors must all specifically agree that at least one act of alleged negligence caused the plaintiff's injury, period, end quote. Schiff doesn't say that. With respect, that is a completely inaccurate description of Schiff. The required unanimity, as in the IPI instructions there and here, which were the same, stated in Schiff, and I now quote the Schiff court, is that the defendant was negligent in one or more of the respects set out in the instructions, and the plaintiff was injured, and the negligence of the defendant was approximate cause of the injury suffered, end quote. That's the description in Schiff, and the defendant's criticism here of Judge Stanislau below is, I think, unwarranted. There is one, and Justice Hyman made reference to the criminal cases at a minimum, and I have suspect, my word, not his, applicability here because criminal statutes set out what's involved. Here, the standard, the gravamen of the case is expressed in IPI 10.04 given to the jury. It was the duty of the defendants to be free from negligence, and that is the sole issue in this case, and the sole allegations all relate to the deprivation of oxygen, and all of the negligence in this case occurred over a 27-minute period. The burden instruction says that we have to prove that the defendants acted or failed to act in one of the ways claimed, and that in so acting, and this sets out the elements of the case, in so acting, the defendants were negligent, that Stephen was injured, and that the negligence of the defendants was approximate cause, and those are the ultimate issues in the case. Now, the trial judge here knew that he was required under Supreme Court authority. He was required, except in very limited circumstances, which don't apply here, to substantively respond, and he also knew that the only response from defense counsel, which was basically tell them to read the instructions they already have, is in most cases, under the case law, no answer at all. Now, no case, and the Illinois case, has disclosed any issue with the IPI instruction on these issues. They don't even discuss the IPI, so it's not an issue. Well, that's right, and they don't discuss it, and I respectfully suggest the reason is that it's not an issue. Mr. Reagan, do the IPI instructions answer discussion, this issue that's been raised? Well, they do not take up what the defendants say the issue is, and what they contend, and that gets to be very interesting in this case. They do address the issue in direct response to your question in the manner that I've just described respectfully, because they say that the issues in this case are negligence and approximate cause and injury, and so they do address the proper view of the law here, and what's being advocated by the defendants is an improper view of the law, and is not supported anywhere. They haven't brought you an Illinois case. They put their own gloss on Schiff. I'm certainly happy to rest upon the court's reading of Schiff, and they haven't brought you any other case from anywhere else. Mr. Reagan, if you can address Mr. Eaton's point, which is that the logical sort of extreme of your argument is that you can have a plaintiff who alleges negligence based on 12 separate acts or omissions, each of which is governed by its own standard of care, and for purposes hypothetical, its own expert, and that you can have a plaintiff's verdict in which each juror only agrees with one distinct or separate allegation of negligence act or omission, and you take those together, and that the plaintiff's verdict can be sustained. Would you respond to that? That verdict should be sustained. Each juror looks at the evidence. We know that the sub-allegations of negligence in this case, there are four, but it could be 12. The number's immaterial as long as it's more than one, and we know that because in this agreed issues instruction, those sub-allegations are put in. So there was expert testimony on all the injured, and therefore, under the cases that we've given you from around the country, the jurors are entitled to look, each juror is entitled to look at a sub-allegation of negligence and to, and we presume that they follow the law, so they look at that sub-allegation, and they determine whether the evidence, the expert testimony on that particular allegation is correct, you know, whether they agree with it. And so if you have three who pick number one and three who pick number two, that is a fine verdict. There is nothing wrong with that, and they have not given you a single civil case to suggest to, so I'm not afraid of discussing that hypothetical at all, Justice Taylor. Let's follow up on that. Yeah, I read Dillard versus Everson Hospital, and what it said there, you know, when there is a general verdict and more than one theory is presented, the verdict will be upheld if there is sufficient evidence to sustain either theory, whatever theories there are, unless it's special interrogatory. So would you find that helpful to you, or do you think that's irrelevant? Well, I think it's helpful to me. My friend, Mr. Reed, said that he's familiar with the case because he's dealt with special interrogatories. I'm familiar with Dillon because it was my case. But it's helpful, and I don't regard it as irrelevant. I also don't think that it controls the outcome of the case. You say that Mr. Eaton, his formation of the issue is different than how you would form the issue. How would your issue formation be different than his? Well, I go back to the beginning of my argument that there was only one wrong here, and there's no—the ultimate issues in this case, I suppose, if you're asking, you know, how do I frame the issues, and it is this. If we put this in our brief, they say in their brief that the ultimate issues are the standard of care and the breach with respect to that standard of care, et cetera. And we think not. The ultimate issues in this case are negligence. Was there negligence as defined by the testimony? Was there an approximate cause, and did the approximate cause of an injury? So that's the issue as we see it, and then we look at the law, which is that there's no support for the proposition that there has to be unanimity. I would suggest to the court when it comes time for Mr. Eaton to, for his rebuttal, that the court may wish, but that's, of course, within your decision, to ask them how their proposal, their only proposal to the circuit judge to simply reread the instructions that they already have, how that embodies, how those today. They don't, you know, and they have not suggested to the trial court, they did not suggest at the time of what it mattered, nor in the post-trial motion, nor in their briefs, that have they described how this would work. You know, what instructions would they give to the jury? Now, obviously, it's easy to say, okay, we're going to write this long instruction, but we've submitted Illinois authorities suggesting that there would be chaos in the courts if that happens, and if they are correct, and I believe perhaps Justice Hyman talked about this, that, you know, this, and maybe the other two justices did too, this will overflow its banks. There's nothing special about medical malpractice cases. It's just they require expert testimony, and the expert testimony is what is the threshold for the evidence to come in, and then we've cited the IPI instruction that says what's in, that that evidence is to be regarded as any other evidence, as any other testimony, but if it applies to medical malpractice cases, then it applies to any professional negligence case. It applies to any case in which there is, you know, expert testimony on anything other than damages, let's say, although their causation may come into play, so you're dealing with products like those. It seems that their focus is on the standard of care, and that each cause of action or theory, however you want to discuss it, count, may have a different cause, a different standard of care. That's how they're differentiating what you're saying. That's how I differentiate what you're saying from what they're saying. They're going further down, and so I'm happy to go down with them and with your question of me to look at each sub-allegation of negligence. You referred to them as a count, but let's say the sub-allegations because that's really what it is, and for each sub-allegation, there indeed must be proper expert testimony to support that, no doubt about it, and there was because if there had not been, the judge would not have allowed it to be a sub-allegation in the issues instruction, and the issues instruction was agreed here. We started off with, I think, six in the complaint, at least six, and it was widowed down to four, and that was agreed, so the fact that you have to have a testimony as to a specific standard of care is absolutely the law. Johnson doesn't tell us anything that's relevant to this case at all. I mean, we agree that you have to have that testimony, and once it comes in, then the jury weighs that theory, that particular sub-allegation, that theory, and it looks at the cause of the causation, the injury, et cetera, et cetera, and then each juror gets to decide whether they agree that that sub-allegation within standard of care was negligent, and if negligent, then was it due to approximately cause something. Mr. Reagan, I want to get back to something that you've said a couple times, which is that there's only one wrong here, and I guess my question is, what do you mean by wrong? Because I think we can all agree that there's one injury here. The plaintiff was deprived of oxygen and suffered brain damage, but it seems to me that there's more than one wrong here. There are four different wrongs, four exclamations, each of which, on their own, approximately caused all the damages that the plaintiff was awarded. Is my perception of this case accurate or not? It is to that extent. We may disagree as to the conclusion you may draw from it, but you haven't asked me about the conclusion to draw from it. Let me ask you then, how many wrongs are there? Aren't there four wrongs here? No, I don't think there is. How do you define wrong? I'll tell you how I define it. A wrong is an act or a mission that constitutes negligence. My putting wrong in my first sense of this argument was just, I invented it yesterday in a way of trying to show that, in a sense, there's been one breach of duty here. I would be happy to simply back away from saying there was only one wrong. I will say that there was one duty here, and that was the duty of the defendants to use ordinary care. But there's actually more than a breach of one duty. It's a breach of multiple duties. Because if I understand it correctly, there were different theories of negligence, and they were supported by different experts. I think there's at least two or perhaps three. Now there's four allegations, but perhaps two of those are somewhat similar. Isn't there more than one duty involved here? Your Honor, with complete respect to the court, I disagree. Because the duty is framed by the instruction 1004. It was the duty of the defendants to use ordinary care for the safety of the plaintiff. The sub-allegations of negligence, each supported by expert testimony, were means in which, ways in which, that duty was breached. And it is useful to have the ordinary negligence hypothetical, which was used earlier by Justice Hyman. It was used in Stoner case, California case, which discusses this in great detail. And that is so you can have wildly different things in a car case. You could have somebody who was on the phone. You could have somebody who was a driver on the phone, and the those two things. There's an allegation that he went too fast, that he didn't pay attention, that he didn't yield the right-of-way, the blue stop sign, all those things. And those are not separate duties. The duty was to safely operate the automobile so as not to injure people. And those ways of violating that duty are the sub-allegations. And quite clearly, the jury gets to pick among them. And they get to pick among them in a medical malpractice case, too, as long as the evidence is sufficient to make that proper consideration for the jury. Are you aware, has this issue ever come up in the context of a contract case, where the plaintiff alleges that the defendant breached the contract in one of multiple ways, and as a proximate cause of that breach was damaged? Is there any case law in that area? Well, Your Honor, my answer to your question is, I am not aware of that. I want to stay with you on that point for one quick second. I want to say that in Illinois, well, let's get, I'm not aware of a case. I can come close with the Stoner case in California, because that was a fraud case. And the plaintiff says, I was defrauded in the following ways. And there were multiple misrepresentations. Pardon me? Multiple misrepresentations. Yes, exactly. And there, the court analyzed this in detail and pointed to a negligence, a legal negligence case that had recently been decided by the Supreme Court of California. And in that case, the Supreme Court of California said there was only one injury. But the injury could have been caused in several different ways. And that's partly what informed my searching for a word to start with today. There's only one wrong. But I'm not married to it, and it doesn't necessarily draw upon any body of law, but the duty does. I'll make you not be impolite. I see my time's up. And should you wish me to tell me to finish, I would. Well, if we have more questions, anybody, go ahead, Justice. Yeah, I do. Because I want to just be clear. And I'm going to ask Mr. Egan to respond to the same question. So, Mr. Egan, what you're arguing here is that there's basically, the issue here is whether or not, or that the duty is to avoid deviation from the standard of care. And that's the duty. And then once there is breach of that duty, once there's negligence, and if any one of those acts of negligence approximately causes injury, that's all that's argument, correct? Absolutely, Your Honor. Okay. And I want to see if Mr. Egan, there may be more questions for you, but I'd like Mr. Egan to respond to that same question. Because I think that's where this issue, I think that's what's going to decide this case. And we don't know where we are with this at this point. So, thank you. Just to follow up on Justice Walker's question, the difference between the two sides then is, and maybe tell me if you think I'm right or wrong, is that you say that there's sub-allegations, but really it's all one ball of wax, is what you are saying. And Mr. Eaton is saying is, no, they're separate because they each have a different standard of care. It boils down to the standard of care that goes to each of those different sub-allegations. And that is where the two of you disagree as to how to look at this case. Well, I would say that that's not really their disagreement. I don't think we disagree on that. I mean, there has to be a standard of care articulated. I know there's a standard of care, but they're saying there's a different standard. You have to get, each allegation may have a different standard of care. Because they're testimony from different experts, and they're saying for that one standard of care, there needs to be unanimity. Yeah. Well, that's their point. There has to be unanimity on each, and we disagree with that. But the standards- And the experts disagree also. The experts go different ways. Their experts go, and your experts go different ways on whether or not there was deviation from the standard of care. Right. But that's for the jury to decide on each sub-allegation of negligence. And that's where the issue resides. And then the question becomes, in the words of the instruction, was it negligence? And then was it approximate cause, et cetera? Okay. You can conclude, please. I have. Thank you, Brian. But we would ask, of course, that the court, the circuit court, be affirmed in its entirety. Mr. Eaton. Thank you, Your Honor. Let me begin, and then I'm going to get to Justice Walker's question as well. Counsel, and I'm sure he's not doing this intentionally, but continues to misrepresent what happened in shift in terms of the answer and the response. And the trial did exactly the same thing. The question was, it's fine for the plaintiff. Does it require a unanimous vote for at least one item of three allegations? The court responded, not with the previously given instruction, but responded, you must be unanimous. He left that out when he was quoting what the answer was, when he was referring to the answer for this court. That's a very critical deletion because that's what the law is according to shift. Let me get back to some questions also that I know Justice Taylor had asked. So are you saying to Mr. Reagan that one vote for each of the 12 allegations is enough? What's left out of that equation is that there were 11 votes that were saying there was a deprivation of the statehood of care. That makes no sense. When you read Johnson, read medical malpractice cases, are we really saying that we're jury votes 11 to one against whether there was a violation that somehow that meets the burden? Realistically, Mr. Eden, that's not what we have here. And I know we've been using this whole thing of 12 different allegations as a basis here, but that's definitely not what we have in this case. But we have either three or four. So let's think about it that way for a second. And then you can make the same argument, but let's think about it with what we really have in this case. And I realize that taking things to the extreme is sometimes the best way to get everybody to understand where we are, but let's deal with where we really are with this case. What we know in this Justice Walker is that an hour before this verdict was rendered, there was a indication from the jury that they were unanimous on two allegations that they disagreed with. They were unanimous that he did not commit malpractice. They had a split on one and they agreed. I know what counsel said in his brief, well, how do we know at that particular moment that it didn't change? Well, it did change because they were told they didn't have to be unanimous. And that's just wrong. There's got to be at least one allegation involving medical malpractice standard of care, particularly since there were different standards of care established by the experts. So Mr. Eden, based on that, what do we know about the two issues upon which they were unanimous? Tell us what do we know based upon the jury's question? Well, the only thing we know is that they held in favor of Dr. June. That's what they said. They said with respect to those two that are unanimous, we didn't find it in that instance, but we're split on one and we have a majority on the other. That's all we know. And by the way, and I know this is probably getting into the weeds somewhat, we don't know this, but I think it's a fair speculation, is that they come back with a verdict in an hour. They hadn't even got the damages yet. And there was 117,000, excuse me, 117 million being requested by the plaintiff's attorney. And they came back with 45, which means they went through each category of damages in addition to finding whether there was liability, in addition to contacting the bailiff, in addition to coming back and having the verdict read in that hour and 15 minutes. So I think it's fair to assume that based on that misinstruction, and that's where I disagree somewhat with Justice Hyman's question with respect to Dillon and counsel's response, is because when you're dealing with a misinstruction that led to the general verdict, that's error. That's very prejudicial error. And so I agree with counsel that I don't think the interrogatories would have been asked under those circumstances. Also, Your Honor, I know counsel maybe admitted that the word wrong was not a word that he should be using because I'm not sure it applies here. I'm not even sure the word sub-allegations apply either. What we're talking about here are allegations of specific negligence that each had a standard of care, and there was individual standard of care. And counsel for the plaintiff knew that. For example, when counsel for the plaintiff was arguing in closing to the jury, he said the first next to that is did the standard of care require Dr. Jew to examine Stephen Budds before he paralyzed him? He also argued to the jury, I only have to prove one of these. And what counsel is saying is that on the instruction that was given, all they had to do was have three or four votes in favor of each allegation of the standard of care. That does not square with Johnson in any way, shape, or form. I'm sorry, I lost my internet. I apologize. I will listen to what I missed. I apologize. No problem. I may be asking you a question you just already covered. But with regard to what you are asking for, as I understand it, you objected to what the judge stated in the response. And your objection was the judge should have just given as a response what the IPI said. Am I correct? What the instructions were given. What the instructions were. So it would be the repeating of the instructions. Yes. If that is true, isn't that different from what you're saying now? Because you repeat what you already had does not move the ball at all. It says exactly what you've already said was fine. Because you already agreed that the IPI were all fine. So you're not asking us to do anything different. Well, your honor, respectfully, I disagree. I figured you would, but I have to go. Mr. Egan, I want to just follow up on this point as well. So it's the same question. You're not getting two questions, but I just want so you can address both of us. Yes. I asked Mr. Reagan if the IPI addresses this legal question that we have before us today. And I think he said, not really. And if you're saying that the jury should have simply been instructed in response to its question to follow the instructions that were given, we're back to where we were, which is there is no answer. I mean, so the question is, why isn't this issue forfeited? Because I think your position is that the jury should have been instructed that the answer to its question was, yes, you must be unanimous as to any single claim of negligence in order to find a verdict for the plaintiff. I think your questions are related, so I'll answer them both. Number one, the preferred answer would have been what you just said. And maybe we would have cited shift had we been given time to do so. It was the judge's instruction. We objected and it was given. But with respect to what the instructions are already given said, it put the burden on the plaintiff to prove one or more of the following. And it said that the verdict must be unanimous. Putting those two together in the general instructions that were given, in our opinion, was the answer. Is that the ideal answer? No. But is it better than giving a wrong answer? Yes. And so I think under these circumstances, particularly since we were not even given an opportunity to, one, think about it, contact the public counsel, like happened in the Sherman Advocate case in DuPage County, we might have come up with shift and it's the trial judges in that case. Well, you're right. So I'll give this instruction. But I hope I'm answering both of your questions by saying that the general instructions that were given, we have no objection to. Could they have been more specific on this issue? The answer is the IPI does not address it, but it does say a unanimous verdict is required and it does say the burden is on the plaintiff to prove the following. And I don't think there's any disagreement between Mr. Reagan and me with respect to it must be unanimous as to each element of the cause of action. Specific negligence must be unanimous, causation must be unanimous, and injury must be unanimous. I think we all agree on that. Then it gets down to the issue of what we're determining negligence, what do you have to have in order to have unanimity? And we're saying these are not sub-allegations. These are allegations of specific negligence. There was only one, you didn't have unanimity. The fact that there's two, three, and four doesn't change the rule that you need the unanimous, you need unanimity on one of those allegations. So that's not what the IPI says that you already agreed to. So if the judge gave the same IPI again and repeated it verbatim as he had instructed, that is a lot different than what you're saying here today. Well, Your Honor, first of all, it's easier for me to say it here today versus when counsel for the defendants was there at the time when they were given the opportunity to look for the right answer. And by the way, that is an answer to say to look to the general instructions. Despite what Mr. Reagan has said repeatedly, the Waddesdon case, which he cited, says that the standard answer is go back and look at the instructions. That's been repeated. That is not a waiver. That's not a forfeiture. Looking at the instructions that require unanimity is better than biding them or answering their question that you don't need unanimity. That's the wrong answer. Are the instructions as crystal clear as we would like? No. That's easy for me to say now because I've had a chance to look at the situation. But at the moment, that is not a waiver or a forfeiture of any position that by saying look at the instructions already given, that somehow that's a forfeiture. What we're hoping is that this court will agree that number one, the correct answer is that they needed to be unanimous on more and more of the following, one or more of the following, and to give you a reason for that answer. And I think that's what was missing somewhat in Schiff, although Schiff was binding the authority on the trial. Can you finish your sentence when you said one or more of the following? What follows the following? One or more of the following allegations of negligence. And in this case, when you're dealing with a mid-male, each allegation required a separate standard of care, which we have here. And the plaintiff recognizes it. That's why he argued they closed the sentence. I only had to prove one. Well, he's right, but he's got to prove it, that there was a standard of care that caused an injury, and that requires unanimity. We're not saying that to everyone, but at least one. And so, Mr. Eaton, there's still that overriding problem here, is that what we're dealing with is a general verdict. And we have no way of knowing what the jury was thinking, what happened after the jury went back to deliberate. We don't know which standards of care that they believed were deviated from and which ones were not. We don't know which issues of negligence they were accepting and which they were not. We just don't have the information, because there were no special insurrections. Your Honor, what we do know is that you assume the jury are going to follow the instructions, and they were just told that they didn't need to be unanimous. That assumption is embedded in case after case after case. Jurors will follow the instructions. So if they followed the instructions given by the trial judge here, they could have just stopped with a majority on unanimity. Now, again, we're not listing the stratus, what they did or didn't do, but I do know case after case after case where they have found inherent, I won't use the word inherent, they have found prejudice where they have been misinstructed. And I think that you can't count on the general verdict rule where there's no special interrogatories, and the general verdict itself is based on bad instruction. That, I think, is the law. Mr. Eaton, was there anything preventing defense counsel from asking the judge to give special interrogatories after the judge answered the question? In a way, counter to defense counsel's position? After he gave the instruction during the deliberation, honestly, I've never seen that, where a special interrogatory has been given under those circumstances. So I don't know at that point whether or not that would have been appropriate or whether it's ever been done. And what we do know is that shortly after that instruction, they came back with a verdict, and that's how we know. You know, and I guess I'm somewhat surprised that this issue hasn't come up because every medical malpractice complaint I've ever seen has a subparagraph or a subpart to the paragraph regarding negligence, right? Right, right. It's completely foreseeable that a jury could come up with this question. They could find themselves in a situation where, you know, they all have different views on how the doctors were negligent, but they don't agree on any single view. And so, you know, could not defense counsel have foreseen this issue? I think both sides would have had a view on that. I mean, it's been 21 years since SHIP was decided, 21 years since SHIP said it is okay, and if the plaintiff's bar disagreed with SHIP, then it seems to me they would have taken the initiative to clarify that issue. But you're right, that has not been done. And I think what we saw is that right after we had this case in Gale Ridge, it happened out in DuPage County. So I think you're right. I think it's happened more often than we're aware of where there's been juror questions. And now I think some answers probably have been look at the instructions, which I think is kind of the standard answer. I'd like to ask whether, if I blue pencil the judge's answer to the first question, which is really the only one, because the second time he said read my first one. All right, so let me blue pencil, and you tell me if this would have met with your approval. In order to proceed, he said, you must make an unanimous decision that Dr. Duke was negligent. You need to be unanimous to at least one of the four possible acts that constituted negligence. Is that blue pencil a description of what you think would be appropriate? Yes, I think, Your Honor, where I agree with the trial judge is you need to show that there was negligence. The first part, I would stop there and then maybe just eliminate the word not. Well, that's what I did. I put it, but there needs to be at least one, you know, usually there's four, at least one of the four possible acts that constituted the negligence. That, to me, summarizes what you say should have been said. Yes, and I think it would have been clear to us had we had the opportunity, and I don't want to be beating a dead horse, and I apologize if I am, but if we had the opportunity to go back, find Schiff, which is the only case that dealt with this issue and cited it like they did in DuPage County, which resulted in a mistrial. I hate mistrials, but, hey, if that happens, it happens based upon the correct instruction. All right, if you would please summarize, and you're out of time, but you may have the last 30 seconds. Oh, thank you, Your Honor. So, Your Honor, as I've said several times in this argument, what we would like the court to do is reverse this for a new trial because we believe this jury was misinstructed. And also, if they agree, if you agree with us that there is a misinstruction, explain why, in the context of medical malpractice case law, such as Johnson v. Armstrong. So, we respectfully ask this court to reverse the verdict. Thank you very much. I want to thank both of you for your, of course, excellent arguments. We are fortunate. It's not often we get two deans of the appellate practice before us. Both of you are very professional, extremely compelling, both sides. You've given us a lot to think about. And your briefs were excellent. It really is an honor for all of us to hear Castle make such compelling arguments from both sides. So, thank you very much. You'll take everything under consideration, and have a good afternoon. Thank you.